UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| MILO & GABBY, LLC and KAREN KELLER, an individual, | No. 13-cv-1932-RSM |
|---|---|
| Plaintiffs, | AMAZON.COM, INC.'S MOTION FOR SUMMARY JUDGMENT |
| v. | Note for Motion:  Friday, July 3, 2015 |
| AMAZON.COM, INC., | |
| Defendant. | |

MOTION FOR SUMMARY JUDGMENT

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND ........................................................................... 1

    A.    Third-Party Sellers Provide Content for Product Offerings and Advertisements, and Are Responsible for Ensuring That the Provided Content and Products Are Lawful ............................................................ 2

    B.    Amazon's Policies for Responding to Claimed Infringement .............. 3

    C.    M&G's Allegations All Stem from Material Provided by Third-Party Sellers ...................................................................................................... 3

    D.    Amazon Has Been Responsive to M&G's Allegations of Infringement ............. 5

III. PROCEDURAL BACKGROUND .................................................................. 6

IV. ARGUMENT ................................................................................................. 6

    A.    Legal Standard ...................................................................................... 6

    B.    M&G Cannot Sustain a Claim for Direct Copyright Infringement ....... 7

          1.    Amazon Did Not Actively Participate in or Directly Cause the Alleged Copying ....................................................................... 7

          2.    Amazon Is Immune from Liability Under the DMCA Safe Harbor ....... 10

                   a.    Amazon Is a Service Provider Under 17 U.S.C. § 512(k)(1)(B) ........................................................... 11

                   b.    Amazon Has Adopted and Reasonably Implemented a Policy That Provides for Termination in Appropriate Circumstances ....................................................... 11

                   c.    Amazon Does Not Interfere with Standard Technical Measures ................................................................. 13

                   d.    Amazon Did Not Have Actual or Apparent Knowledge of the Alleged Copyright Infringement Prior to the Filing of This Lawsuit ................................................... 13

                   e.    Amazon Acted Expeditiously to Remove Allegedly Infringing Material in Response to M&G's Complaint ........... 15

                   f.    Amazon Lacked the Ability to Control Allegedly Infringing Activity ................................................... 15

MOTION FOR SUMMARY JUDGMENT - i

3.    Amazon Is Not Liable Under 17 U.S.C. § 1202 Because It Did Not Intentionally Remove or Alter Copyright Management Information. ............................................................. 17

C.    Amazon Is Not Liable for False Designation of Origin Under the Lanham Act ................................................................................................ 17

1.    M&G's Trademark Claim Is Precluded Because It Is Based on the Same Materials That Give Rise to M&G's Copyright Claim ................. 18

2.    Amazon Did Not "Use" a False Designation of Origin .......................... 19

3.    Amazon, as an Online Intermediary That Takes Reasonable Steps to Prevent the Sale of Counterfeit Goods on Its Website, Cannot Be Held Liable for Trademark Infringement Under 15 U.S.C. § 1125(a)(1)(A) ........................................................................................ 21

D.    Amazon Is Not Liable for Direct Patent Infringement Because Amazon Has Not "Sold" or "Offered to Sell" Any Allegedly Infringing Pillowcases ...... 23

V. CONCLUSION ..................................................................................................... 24

MOTION FOR SUMMARY JUDGMENT - ii

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Aimster Copyright Litig.*,
   252 F. Supp. 2d 634 (N.D. Ill. 2002) ....................................................................12

*ALS Scan, Inc. v. RemarQ Communities, Inc.*,
   239 F.3d 619 (4th Cir. 2001) ...............................................................................8

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir.
   2011) ...............................................................................................................6

*Corbis Corp. v. Amazon.com, Inc.*,
   351 F. Supp. 2d 1090 (W.D. Wash. 2004)....................................................... passim

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003)............................................................................................19

*Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*,
   472 F. Supp. 2d 385 (E.D.N.Y. 2007) ...............................................................24

*Ecodyne Corp. v. Croll-Reynolds Eng'g Co.*,
   491 F. Supp. 194 (D. Conn. 1979)......................................................................23

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) ..........................................................................19, 20

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
   930 F.2d 277 (3d Cir. 1991)..............................................................................10

*Furnace v. Sullivan*,
   705 F.3d 1021 (9th Cir. 2013) ............................................................................6

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
   955 F.2d 1143 (7th Cir. 1992) .......................................................................19, 20

*Hendrickson v. Amazon.com, Inc.*,
   298 F. Supp. 2d 914 (C.D. Cal. 2003) ............................................................16, 24

*Io Grp., Inc. v. Veoh Networks, Inc.*,
   586 F. Supp. 2d 1132 (N.D. Cal. 2008) ..............................................................15

*Jalbert v. Grautski*,
   554 F. Supp. 2d 57 (D. Mass. 2008) ..................................................................10

MOTION FOR SUMMARY JUDGMENT - iii

*Online Policy Grp. v. Diebold, Inc.*,
   337 F. Supp. 2d 1195 (N.D. Cal. 2004) ...................................................................7

*Oscar Mayer Corp. v. Mincing Trading Corp.*,
   744 F. Supp. 79 (D.N.J. 1990) ...........................................................................24

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ....................................................................15, 16

*Perfect 10, Inc. v. CCBill, LLC*,
   340 F. Supp. 2d 1077 (C.D. Cal. 2004) .............................................................12

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   213 F. Supp. 2d 1146 (C.D. Cal. 2002) ...............................................................7

*Perfect 10 v. Google, Inc.*,
   416 F. Supp. 2d 828 (C.D. Cal. 2006) .........................................................15, 16

*Prima Int'l Trading v. Wyant*,
   No. 6:07-CV-338-REW, 2009 WL 722609 (E.D. Ky. Mar. 17, 2009) ...................24

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ................................................................7, 8

*Sega Enterprises Ltd. v. MAPHIA*,
   948 F. Supp. 923 (N.D. Cal. 1996) ..................................................................8, 9

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990) ........................................................................18

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
   7 F.3d 1434 (9th Cir. 1993) ...........................................................................18

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ........................................................................18

*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F.3d 93 (2d Cir. 2010)...............................................................18, 21, 22, 24

*Toho Co. v. Sears, Roebuck & Co.*,
   645 F.2d 788 (9th Cir. 1981) ..........................................................................19

*Tre Milano, LLC v. Amazon.com, Inc.*,
   No. B234753, 2012 WL 3594380 (Cal. Ct. App. Aug. 22, 2012) .........................22

MOTION FOR SUMMARY JUDGMENT - iv

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,*
   718 F.3d 1006 (9th Cir. 2013) ...................................................................................15

**Statutes**

15 U.S.C. § 1114 .....................................................................................................1, 21

15 U.S.C. § 1125(a)(1) .........................................................................................1, 3, 21

15 U.S.C. §1125(a)(1)(A) .......................................................................................passim

17 U.S.C. § 101 ...........................................................................................................10

17 U.S.C. § 512 ...........................................................................................................11

17 U.S.C. § 512(i) ........................................................................................................13

17 U.S.C. § 512(i)(1)(A) ..............................................................................................11

17 U.S.C. § 512(i)(1)(B) ..............................................................................................13

17 U.S.C. § 512(i)(2) ...................................................................................................13

17 U.S.C. § 512(c) .....................................................................................................7, 10

17 U.S.C. § 512(c)(1)(A) ........................................................................................13, 15

17 U.S.C. § 512(c)(1)(B) ..............................................................................................15

17 U.S.C. § 512(c)(1)(C) ..............................................................................................15

17 U.S.C. § 512(c)(3)(A) ..............................................................................................14

17 U.S.C. § 512(k)(1)(B) .........................................................................................10, 11

17 U.S.C. § 1202 ...........................................................................................................1

17 U.S.C. § 1202(b) ......................................................................................................17

35 U.S.C. § 271(a) ........................................................................................................23

U.C.C. § 2-106(1) .........................................................................................................23

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................6

MOTION FOR SUMMARY JUDGMENT - v

1

**Other Authorities**

2  H.R. Rep. No. 105-551(I), at 11 (1998) ..........................................................................8

3  J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:18,
4     at 27-37 (4th ed. 2014) ..........................................................................................21

5  1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[D][2], at
      1-88.12 (2015) .......................................................................................................18

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR SUMMARY JUDGMENT - vi

# I. INTRODUCTION

Defendant Amazon.com, Inc. ("Amazon") moves for summary judgment on Plaintiffs Milo & Gabby, LLC and Karen Keller's (collectively "M&G") remaining claims for patent infringement (direct), copyright infringement (direct), false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1), and violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202.[1] M&G's attempt to manufacture liability against Amazon based on the actions of third-party sellers who used the amazon.com platform and accompanying fulfillment services to sell allegedly infringing pillowcases fails. The undisputed facts show that Amazon did not offer for sale or sell the allegedly infringing pillowcases, third-party sellers supplied all allegedly infringing images and materials, and Amazon has acted at all times in good faith by removing listings and blocking offending third-party sellers. Summary judgment should thus be granted in Amazon's favor on all of M&G's remaining claims.

# II. FACTUAL BACKGROUND

Amazon operates the website www.amazon.com. Declaration of Dung Phan ("Phan Decl.") ¶ 2. The amazon.com website is a retail platform through which Amazon or third-party sellers offer products for sale to the public. *Id.* Third-party sellers who offer products via the amazon.com platform enter into a contract with Amazon. *Id.* ¶ 3. Amongst other requirements, third-party sellers must agree to be bound by the terms and conditions of their third-party seller agreement. *Id.*

---

[1] The Court previously granted Amazon's Rule 12(b)(6) motion, dismissing M&G's claims for unfair competition under Washington's Consumer Protection Act; violation of M&G's right of publicity; and trademark counterfeiting under 15 U.S.C. § 1114. Dkt. #13. The Court also struck M&G's claim for patent infringement based on any claim for induced, contributory, or willful patent infringement, as well as M&G's claim for indirect copyright infringement. *Id.* As a result, the only claims that remain are Causes of Action I (direct patent infringement); II (direct copyright infringement); IV (false designation of origin under Lanham Act, 15 U.S.C. § 1125(a)(1)); and VI (removal of copyright management information under the Digital Millennium Copyright Act).

MOTION FOR SUMMARY JUDGMENT - 1

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

**A. Third-Party Sellers Provide Content for Product Offerings and Advertisements, and Are Responsible for Ensuring That the Provided Content and Products Are Lawful**

When a third-party seller wants to offer a new product for sale on the amazon.com platform, the third-party seller is responsible for sending Amazon, via an automated file upload system, content related to the new product, such as a product description, an image of the product, and the product's price. *Id.* ¶ 5. This content is used to automatically generate a "product detail page"[2] and, in some instances, to create advertisements related to the new product. *Id.* ¶ 6; Declaration of Lauren Gemmell ("Gemmell Decl.") ¶ 4; Declaration of Vishal Shanbhag ("Shanbhag Decl.") ¶ 2. The third-party seller is responsible for the uploaded content, and specifically represents and warrants that it has the right to grant Amazon a license to use all content, trademarks, and other materials provided by it. Phan Decl., Ex. A (Amazon Services Business Solutions Agreement ¶¶ 4, 5 & Definitions, including "Content," "Your Materials," and "Your Trademarks"); Ex. B ("As the creator of a product detail page [the third-party seller] [is] responsible for its initial content[.]").

Amazon's role with respect to the submitted content and the product offerings is limited and passive. Phan Decl. ¶ 7. Amazon does not suggest prices for third-party offerings, or generally involve itself in third-party sales except to set parameters on terms and conditions of use. *Id.* Those parameters include a third-party seller's agreement to be bound by Amazon's policies, including acknowledgment that "[p]roducts offered for sale on Amazon.com must comply with all laws and regulations and with Amazon's policies." *Id.* ¶ 8, Ex. C. Under Amazon's Intellectual Property Violations Policy, third-party sellers are responsible for ensuring that the products they offer for sale are legal. *Id.* ¶ 9, Ex. D ("Sellers are responsible for ensuring that the products they offer are legal and authorized for sale or re-sale."). Further, with respect to

_____

[2] A "product detail page" is a webpage specific to the product where a consumer can view information about the product such as the product's description, images of the product, and the product's price. Phan Decl. ¶ 5.

MOTION FOR SUMMARY JUDGMENT - 2

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1  images in particular, third-party sellers agree that it is their responsibility to "ensure that [they]

2  have all the necessary rights for the images [they] submit." *Id.* ¶ 10, Ex. E.

3  All products offered by third-party sellers are owned by the third-party sellers. *Id.* ¶ 11.

4  Third-party sellers may ship their products to customers directly or, for a fee, use the

5  "Fulfillment by Amazon" ("FBA") service. Declaration of Dan Rawson ¶ 2. Third-party sellers

6  who use Amazon's FBA service retain legal title to their products, while Amazon simply

7  provides fulfillment services for the products, such as storage and shipping. *Id.* ¶¶ 3, 4.

8  **B.    Amazon's Policies for Responding to Claimed Infringement**

9  Amazon respects the intellectual property rights of others. Phan Decl. ¶ 12. Amazon's

10  policies prohibit counterfeit items and violation of third-party intellectual property rights. *Id.*,

11  Exs. A, C, D, F, G. When Amazon receives notice of claimed infringement, Amazon

12  investigates. *Id.* ¶ 13. If a product listing is determined to be counterfeit or in violation of third-

13  party intellectual property rights, Amazon may block the listing or block the seller (who is not

14  allowed to open a new account). *Id.* When Amazon receives notice of claimed infringement,

15  Amazon strives to take appropriate action within 12-24 hours, and on average no more than 48

16  hours. *Id.*

17  **C.    M&G's Allegations All Stem from Material Provided by Third-Party Sellers**

18  M&G designs and sells animal-shaped pillowcases, and asserts patents, copyrights, and

19  trademarks associated with the pillowcases. *See* Dkt. #1. In its remaining claims, M&G alleges

20  that Amazon offered and sold infringing pillowcases via amazon.com, using M&G's marks and

21  copyrighted images in the pillowcase offerings. Based on those allegations M&G contends that

22  Amazon is liable for direct copyright infringement, violation of the Digital Millennium

23  Copyright Act, direct patent infringement, and false designation of origin under the Lanham Act,

24  15 U.S.C. § 1125(a)(1). *Id.* But it is undisputed that Amazon did not offer or sell any of the

25  allegedly infringing pillowcases at issue. Phan Decl. ¶ 14. Despite the undisputed fact that all

26  pillowcases at issue were offered and sold by third-party sellers via the amazon.com platform,

MOTION FOR SUMMARY JUDGMENT - 3

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1  M&G contends that Amazon is "the real 'seller' of the knock-off products" because: (1) the

2  "products are advertised on the amazon.com domain"; (2) "[p]ayment is made directly to

3  Amazon"; (3) "Amazon issues the invoice and tracking information"; (4) "Amazon ships the

4  products in a box that bears the 'Amazon' logo"; and (5) "Amazon broadcasts email

5  advertisements from its own account (not the manufacturer's) offering the knock-off products."

6  Dkt. #11 at p. 3.  In fact:

7  • All allegedly infringing pillowcases were offered and sold by third-party sellers.
     Phan Decl. ¶ 15.  Amazon is not the seller of record for any of the allegedly
8    infringing pillowcases.  *Id.*  This is confirmed by M&G's own evidence.  *See* Dkt.
     #1, Ex. C (reflecting product manufactured by "Cute Pillowcase" and "Sold by
9    FAC System LLC").  M&G has no evidence to the contrary.

10
     • The content for the allegedly infringing pillowcases (including product name,
11     description, and images) displayed by Amazon was provided by third-party
       sellers.[3]  Phan Decl. ¶ 16; Gemmell Decl. ¶ 3; Shanbhag Decl. ¶ 3.  M&G offers
12     no evidence to the contrary.

13
     • Amazon did not actively copy any of M&G's images.  Phan Decl. ¶ 16.  Nor did
14     Amazon alter, modify, or remove any copyright registration information, or other
       information, related to any images or content supplied by third-party sellers in
15     conjunction with third-party seller offerings of the allegedly infringing
       pillowcases.  *Id.*  In fact, all images and other content provided to Amazon by
16     third-party sellers did not contain any visible patent, copyright, or trademark
       registration information.  *Id.*
17

18   • Amazon provided FBA services to one of the third-party sellers (FAC System
       LLC) that offered allegedly infringing pillowcases.  *Id.* ¶ 17.  In providing FBA
19     services, Amazon never had any ownership interest in or legal title to any FAC
       System LLC pillowcases.  Amazon simply provided a fulfillment service by
20     shipping products to customers when FAC System LLC made sales to customers.
       *Id.*  This is depicted in the portion of Exhibit C to the Complaint, below, which
21     reflects that the product was manufactured "by Cute Pillowcase," "Sold by FAC
       System LLC," and "Fulfilled by Amazon."
22

23

24   _____
           [3] This includes images displayed on product detail pages on amazon.com, as well as
     advertisements of Amazon's service displayed on third-party websites or in customer emails.
25   *See* Phan Decl. ¶ 16; Gemmell Decl. ¶ 4; Shanbhag Decl. ¶ 3.

26

     MOTION FOR SUMMARY JUDGMENT - 4

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

**Pillowcase for child toddler Cute Animal Pink Rabbit Design**
by Cute Pillowcase
Be the first to review this item

Price: **$26.70** ✓Prime

**In Stock.**
Sold by **FAC System LLC** and **Fulfilled by Amazon**. Gift-wrap available.

*See* Dkt. #1-5 at p. 2.

**D.    Amazon Has Been Responsive to M&G's Allegations of Infringement**

Amazon has been responsive to M&G's allegations of infringement by third-party sellers. Immediately upon receipt of this lawsuit in October 2013, Amazon investigated M&G's allegations and promptly removed (within days) the allegedly infringing pillowcase offerings. Phan Decl. ¶ 20.  During the course of this case, additional third-party sellers have offered allegedly infringing pillowcases.  *Id*. ¶ 21.[4]  As soon as Amazon learned of, or was made aware of, the additional allegedly infringing offerings, Amazon promptly removed the offerings.  *Id*.[5] Further, in conjunction with this case, Amazon has also informed M&G of its streamlined process for notifying Amazon of alleged infringement.  Declaration of Vanessa Power ("Power Decl.") ¶ 2.

---

[4] At the time Amazon responded to M&G's response to the Order to Show Cause, in May 2014, Amazon was unaware of additional offerings or sales of allegedly infringing pillowcases by third-party sellers.  Phan Decl. ¶ 21.  As such, the Declaration of Dung Phan (Dkt. #19) contained reference to only FAC System, LLC.  In discovery, Amazon produced comprehensive sales data reflecting all sales of allegedly infringing pillowcases.  Declaration of Vanessa Power ("Power Decl.") ¶ 4.

[5] On one occasion, after counsel for M&G made vague reference on June 25, 2014, to additional allegedly infringing pillowcase offerings on amazon.com, counsel for Amazon asked for links to the allegedly infringing links for Amazon's immediate investigation.  Counsel for M&G did not provide the requested information until August 12, 2014, over six weeks later.  In the interim, Amazon searched for and removed all potentially infringing offerings, including the offerings ultimately identified by M&G's counsel.  Power Decl. ¶ 3.

MOTION FOR SUMMARY JUDGMENT - 5

# III. PROCEDURAL BACKGROUND

The Complaint was filed on October 24, 2013. Dkt. #1. On April 11, 2014, the Court granted Amazon's Rule 12(b)(6) motion to dismiss M&G's claims for unfair competition under Washington's Consumer Protection Act; right of publicity; and trademark counterfeiting. Dkt. #13. The Court also struck M&G's claim for patent infringement based on any claim for induced, contributory, or willful patent infringement, as well as M&G's claim for indirect copyright infringement. *Id.* In conjunction with the motion to dismiss, the Court ordered M&G to show cause why FAC System LLC, a third-party seller of allegedly infringing products, should not be added as a party. *Id.* A ruling on that show cause order remains pending.

The parties participated in mediation on September 25, 2014. Power Decl. ¶ 5. Infringement and invalidity contentions have been exchanged. *Id.* ¶ 6. In light of the fact that the patents at issue are design patents, the parties agreed that a Markman hearing was unnecessary and the hearing was stricken. *Id.* ¶ 7. The parties have exchanged written discovery, and Amazon conducted depositions of Plaintiffs Milo & Gabby, LLC and Karen Keller, as well as of Steven Keller. *Id.* ¶ 8.

# IV. ARGUMENT

## A. Legal Standard

Summary judgment is appropriate when, as here, "taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (internal quotation marks and citation omitted); Fed. R. Civ. P. 56(a). "To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011). Here, M&G has not established, and cannot establish, any genuine issue of material fact precluding summary judgment because, simply put, Amazon did not offer or sell any of the allegedly infringing

MOTION FOR SUMMARY JUDGMENT - 6

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1 pillowcases, third-party sellers supplied all allegedly infringing images, and Amazon has acted at

2 all times in good faith.

3 **B.     M&G Cannot Sustain a Claim for Direct Copyright Infringement**

4          M&G alleges that Amazon publicly displayed M&G's copyrighted images on the

5 amazon.com website and distributed allegedly infringing goods with M&G's copyrighted images

6 on the product labels. Dkt. #1 ¶¶ 28-31.  But the evidence shows that the allegedly infringing

7 images were all supplied by third-party sellers.  *See* Phan Decl. ¶ 15.  And the Court has already

8 stricken any claim by M&G for induced or contributory copyright infringement.  *See* Dkt. #13 at

9 p. 18 ("Plaintiffs have offered insufficient factual support for their alternate theories of recovery

10 based on . . . indirect copyright infringement.").   As such, M&G's only remaining copyright

11 claim is for direct infringement.  M&G's claim for direct copyright infringement fails as a matter

12 of fact and law because: (1) there is no evidence that Amazon actively participated in, much less

13 directly caused, the alleged copying of M&G's copyrighted images; and (2) even if Amazon had

14 actively participated in such copying (which it did not), Amazon is immune from liability under

15 the Section 512(c) safe harbor of the Digital Millennium Copyright Act ("DMCA").

16     **1.     Amazon Did Not Actively Participate in or Directly Cause the Alleged
                Copying**

17

18          To be liable for direct copyright infringement, the defendant must both "'actively engage

19 in' and 'directly cause' the copying."  *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195,

20 1199 (N.D. Cal. 2004); *see also Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d

21 1146, 1168 (C.D. Cal. 2002) ("requir[ing] that defendants . . . *actively* engage in one of the

22 activities [prohibited] in the Copyright Act" to be liable for direct copyright infringement

23 (emphasis in original)).  In other words, a defendant cannot be held liable for direct copyright

24 infringement based on copies of third-party-submitted material that are automatically generated

25 by a system that operates without human intervention beyond the initial set up and continual

26 maintenance.  *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361,

MOTION FOR SUMMARY JUDGMENT - 7

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1368 (N.D. Cal. 1995); *see also ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619, 622 (4th Cir. 2001) (when a service provider "serves, without human intervention, as a passive conduit for copyrighted material, it is not liable as a direct infringer"); H.R. Rep. No. 105-551(I), at 11 (1998) ("As to direct infringement, liability is ruled out for passive, automatic acts engaged in through a technological process initiated by another.").

The Northern District of California has applied these principles in two separate cases: *Religious Technology*, 907 F. Supp. 1361, and *Sega Enterprises Ltd. v. MAPHIA*, 948 F. Supp. 923, 932 (N.D. Cal. 1996). In *Religious Technology*, the court addressed whether Netcom, an Internet access provider, could be held liable for direct copyright infringement where, based on Netcom's software, a third-party user's initial act of posting a message resulted in the automatic copying of the message from the user's computer onto Netcom's computer, and ultimately onto other computers on the Usenet (a worldwide community of electronic bulletin board services). *Religious Tech.*, 907 F. Supp. at 1368. Noting that Netcom "does not create or control the content of the information available to its subscribers" or "monitor messages as they are posted," the court found that Netcom was not liable for direct infringement because it "did not take any affirmative action that directly resulted in copying plaintiffs' works other than by installing and maintaining a system whereby software automatically forwards messages received from subscribers onto the Usenet, and temporarily stores copies on its system." *Id.*

The court came to a similar conclusion in *Sega*, 948 F. Supp. at 932. In *Sega*, the alleged infringer operated an electronic bulletin board that allowed third-party users to upload copyrighted SEGA™ video games. *Id.* at 927. The uploaded video games were subsequently downloaded by other bulletin board users who played the video games with the aid of a "copier" that the defendant sold through the electronic bulletin board. *Id.* at 928-29. Although the alleged infringer maintained the bulletin board and encouraged users to upload and download the copyrighted games, he did not "himself upload[ ] or download[ ] the files." *Id.* at 932. The court found this fact dispositive when assessing the claim of direct copyright infringement. *Id.*

MOTION FOR SUMMARY JUDGMENT - 8

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1 Because the defendant himself did not actively participate in the infringing activity, the court

2 concluded that the bulletin board operator was not liable for *direct* copyright infringement in its

3 summary judgment decision. *Id.*

4     Here, like the accused infringers in *Religious Technology* and *Sega*,[6] there is no evidence

5 that Amazon itself engaged in any allegedly infringing activity. All of the allegedly infringing

6 images at issue here were provided by third-party sellers. Phan Decl. ¶ 16. Amazon's role with

7 respect to the content provided by the third-party sellers was limited and passive. *Id.* ¶ 7.

8 Amazon did not individually review, edit, or otherwise alter the submitted content. *Id.* ¶ 17.

9 Rather, the content was handled in an entirely automated fashion to generate product detail pages

10 or advertisements. *Id.* ¶ 6; Gemmell Decl. ¶ 3; Shanbhag Decl. ¶ 2. The DMCA would be

11 toothless if a service provider, such as Amazon, were not permitted to automatically create

12 product detail pages and advertise with user-generated content. Accordingly, Amazon cannot be

13 held liable for direct copyright infringement based on images that were provided by third parties

14 and displayed on product detail pages or related advertisements through an automated process.

15     Nor does Amazon's provision of the FBA service to fulfill third-party sales create a basis

16 for direct copyright infringement liability, because Amazon never had legal title to FAC System

17 LLC's allegedly infringing pillowcases, and thus could not sell them as a matter of law. M&G

18 appears to argue that Amazon's actions as the provider of shipping services constitute

19 "distribution" under the Copyright Act, but M&G's position lacks merit. Although the

20 Copyright Act does not explicitly define what it means to "distribute" copyrighted works,

21      [6] Amazon, of course, differs from the *Sega* bulletin board operator in at least one respect.

22 Unlike the defendant in that case, Amazon does *not* encourage the uploading and downloading of unauthorized copyrighted material by third-party users. To the contrary, in order to upload

23 content to amazon.com, a third-party seller must acknowledge that he or she does not infringe the intellectual property rights of others and agree that it is his or her responsibility to ensure that they have all the necessary rights for the images they submit. *See* Phan Decl., Exs. A, D, E. If

24 an entity such as the bulletin board operator in *Sega* is not liable for direct copyright infringement, Amazon (which takes active steps to prevent the uploading of infringing content)

25 *perforce* is also not a direct copyright infringer.

26

MOTION FOR SUMMARY JUDGMENT - 9

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1  "distribution" under the Copyright Act is "'for all practical purposes, synonymous'" with the

2  statutory definition of "publication." *Jalbert v. Grautski*, 554 F. Supp. 2d 57, 68 (D. Mass. 2008)

3  (quoting *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 299 (3d Cir. 1991)).

4  Under 17 U.S.C. § 101, "publication" means "the distribution of copies . . . of a work to the

5  public **by sale or other transfer of ownership**."  (emphasis added.)  Here, where Amazon

6  fulfilled sales by FAC System LLC, FAC System LLC remained the owner of the products that

7  Amazon shipped on its behalf as a service.  Taking M&G's argument to its logical conclusion

8  would render all shippers, from Federal Express to the United Parcel Service, potentially liable

9  for infringing works shipped by their customers.  That is not the law.  Thus, because Amazon

10  never had any ownership interest in the products offered by third-party sellers such as FAC

11  System LLC, Amazon cannot be liable for direct copyright infringement with respect to use of

12  M&G's copyrighted images on amazon.com by those third-party sellers.

13       **2.**     **Amazon Is Immune from Liability Under the DMCA Safe Harbor**

14       Even if a genuine issue of material fact existed regarding Amazon's alleged participation

15  in "copying" M&G's images, Amazon would still be immune from liability under the DMCA's

16  Section 512(c) safe harbor.  Section 512(c) of the DMCA "protect[s] eligible service providers

17  from all monetary . . . relief that may arise from copyright liability."  *Corbis Corp. v.*

18  *Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1098-99 (W.D. Wash. 2004).  Under this safe harbor,

19  an entity is protected from liability for copyright infringement if it satisfies the following

20  elements:

21       1.     the entity is a "service provider" as that term is defined in 17 U.S.C.
          § 512(k)(1)(B);

22       2.     the service provider has (a) adopted, (b) reasonably implemented, and

23            (c) informed subscribers and account holders of the service provider's system or
network of a policy that provides for the termination in appropriate circumstances

24            of subscribers and account holders of the service provider's system or network
who are repeat infringers;

25       3.     the service provider does not interfere with standard technical measures;

26

MOTION FOR SUMMARY JUDGMENT - 10

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

4.     prior to the filing of the suit, the service provider had neither actual knowledge of infringing material on its system or network, nor an awareness of facts or circumstances from which infringement is apparent;

5.     the service provider acted expeditiously to remove or disable access to infringing material upon obtaining knowledge or awareness of infringing material on its system or network; and

6.     the service provider lacks the ability to control infringing activity.

17 U.S.C. § 512. Amazon satisfies each of the elements, as set forth below.

### *a.*     *Amazon Is a Service Provider Under 17 U.S.C. § 512(k)(1)(B)*

Under 17 U.S.C. § 512, "the term 'service provider' means a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(B). Because Amazon provides and operates an online platform for facilitating purchasing transactions, there can be no dispute that Amazon qualifies as a "service provider." *See Corbis*, 351 F. Supp. at 1100 ("Amazon fits within the definition" of a service provider).

### *b.*     *Amazon Has Adopted and Reasonably Implemented a Policy That Provides for Termination in Appropriate Circumstances*

Amazon satisfies the eligibility requirement set forth in 17 U.S.C. § 512(i)(1)(A) because it: (1) has adopted a policy for terminating access to its website for repeat copyright infringers; (2) informs its users of this policy; and (3) implements this policy in a reasonable manner.

*First*, Amazon has adopted a policy that provides for the termination of users of its website who are repeat infringers. A properly adopted infringement policy need only "convey to users that 'those who repeatedly or flagrantly abuse their access to the internet through disrespect for the intellectual property rights of others . . . know that there is a realistic threat of losing that access.'" *Corbis*, 351 F. Supp. 2d at 1101 (ellipsis in original; internal quotation marks and citation omitted). Amazon clearly conveys this message to third-party sellers. To list a product on amazon.com, a third-party seller must agree to the terms of a seller agreement that incorporates Amazon's policies and procedures. Phan Decl. ¶ 3. Third-party sellers agree that the products they offer for sale "comply with all laws and regulations and Amazon's policies,"

MOTION FOR SUMMARY JUDGMENT - 11

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

including specific agreement that third-party sellers do not infringe the intellectual property rights of others. *Id.* ¶¶ 4, 6-9, Exs. A, C, D, E. Third-party sellers accused of copyright infringement are sent a notice that informs the user that repeated violations could result in "permanent suspension." *Id.* ¶ 22. Amazon routinely denies repeat infringers access to its website. *Id.* Accordingly, Amazon has established that it has adopted a policy for terminating a repeat infringer's access to the amazon.com website.

*Second*, to adequately inform users of its termination policy, a service provider "need only inform users that, in appropriate circumstances, it may terminate the user's accounts for repeated copyright infringement." *Corbis*, 351 F. Supp. 2d at 1102 (citing *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 659 (N.D. Ill. 2002), and *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1088-89 (C.D. Cal. 2004)). The service provider is not required "to reveal its decision-making criteria to the user." *Id.* As noted above, Amazon informs all third-party sellers—via a seller agreement—that access to the website may be denied if the third-party seller does not comply with all terms and conditions, including Amazon's Intellectual Property Violations Policy. Phan Decl. ¶ 3, Exs. A, C, D, E. Further, Amazon notifies third-party sellers who are accused of copyright infringement that they may be suspended from selling privileges on the amazon.com website due to repeated copyright infringement violations. *Id.* ¶ 23. These measures are sufficient to establish that Amazon has adequately informed its users of its termination policy for repeat copyright infringers.

*Third*, Amazon instructs users on how to make a claim if they believe that their copyright interest is being violated; they may do so via an online form or written submission by mail, fax, or email. *Id.* ¶ 24. Amazon's practice involves removal of product offerings upon adequate notice that the offering violates another's intellectual property rights. *Id.* ¶ 22. Upon removing such offerings, Amazon sends the third-party seller a message informing the seller that the offering may have violated the intellectual property rights of others. *Id.* ¶ 23. Amazon also warns the third-party seller that repeated violations may result in permanent suspension from the

MOTION FOR SUMMARY JUDGMENT - 12

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1 Amazon site. *Id.* ¶ 22. The selling privileges of third-party sellers that are repeat offenders are

2 terminated. *Id.* These measures are sufficient to establish that Amazon reasonably implements a

3 policy for terminating repeat copyright infringers. *See Corbis*, 351 F. Supp. 2d at 1102-06

4 (concluding that Amazon reasonably implements its copyright infringement policy).

5     ***c. Amazon Does Not Interfere with Standard Technical Measures***

6    Amazon satisfies the DMCA eligibility requirement set forth in 17 U.S.C. § 512(i)(1)(B)

7 as it does not interfere with standard technical measures used to identify and protect copyrighted

8 works. The DMCA defines the term "standard technical measures" as "technical measures that

9 are used by copyright owners to identify or protect copyrighted works" and (a) "have been

10 developed pursuant to a broad consensus of copyright owners and service providers in an open,

11 fair, voluntary, multi-industry standards process," (b) "are available to any person on reasonable

12 and nondiscriminatory terms," and (c) "do not impose substantial costs on service providers or

13 substantial burdens on their systems or networks." 17 U.S.C. § 512(i)(2). Here, M&G has not

14 identified and cannot identify any standard technical measure used to identify or protect a

15 copyright interest held by M&G, much less demonstrate that Amazon has somehow interfered

16 with such measures. Absent evidence that Amazon interferes with standard technical measures,

17 this element is satisfied. *See Corbis*, 351 F. Supp. 2d at 1106 (holding threshold condition of not

18 interfering with technical measures established where the plaintiff did not challenge Amazon's

19 assertion of compliance with 17 U.S.C. § 512(i)).

20     ***d. Amazon Did Not Have Actual or Apparent Knowledge of the Alleged***
       ***Copyright Infringement Prior to the Filing of This Lawsuit***
21

22    Under the DMCA, a service provider satisfies the requirement set forth in 17 U.S.C.

23 § 512(c)(1)(A) if the service provider lacks actual or apparent knowledge of the infringing

24 activity. Here, contrary to M&G's self-serving assertion, Amazon had no actual or apparent

25 knowledge that third-party sellers had supplied allegedly infringing images, and were selling

26 allegedly infringing products, before this case was filed. Phan Decl. ¶ 19. M&G contends that

MOTION FOR SUMMARY JUDGMENT - 13

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

in May 2013, Ms. Keller allegedly called Amazon, but that Amazon did not return her call.  *See* Power Decl., Ex. A at p. 12 (Response to Interrogatory No. 15).  Ms. Keller "believes" she called Amazon more than once and "[a]s far as M&G knows her call(s) were never returned."  *Id.*  But M&G does not allege that Ms. Keller provided Amazon with specific notice of alleged infringement, such as a link to the allegedly infringing product offering.  Nor does M&G allege that written notice was ever provided to Amazon, as it was not.  Amazon has no record of any call from Ms. Keller, and Amazon never received a DMCA-compliant written notice of infringement from M&G.[7]  Phan Decl. ¶ 19.  As such, Amazon had no actual or apparent knowledge of the alleged copyright infringement before this case was filed.

Similarly, there is no evidence that Amazon had apparent knowledge of the alleged infringement.  To establish apparent knowledge, M&G must show that "the service provider deliberately proceeded in the face of blatant factors of which it was aware."  *Corbis*, 351 F. Supp. 2d at 1108 (internal quotation marks and citation omitted).  In other words, M&G must show that Amazon "turned a blind eye to 'red flags' of obvious infringement."  *Id.* (internal quotation marks and citation omitted).  No such evidence exists.  Indeed, M&G fails to identify a single "red flag" that would have given Amazon apparent pre-suit knowledge of the allegedly infringing activity.  In the absence of evidence that Amazon actually knew that the content uploaded by third-party sellers was infringing—or at least had knowledge of a "red flag" that would have given Amazon apparent knowledge of such infringement—any argument that Amazon had actual or apparent knowledge prior to the filing of this suit is unavailing.

---

[7] 17 U.S.C. § 512(c)(3)(A) provides that for notice to be "effective under this section" it must be a "written communication" with six elements, including identification of the work claimed to have been infringed, identification of the material that is claimed to be infringing, contact information for the complaining party, and statements supporting the accuracy of the complaint and the complaining party's right to make the complaint.

MOTION FOR SUMMARY JUDGMENT - 14

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1           **e.**    ***Amazon Acted Expeditiously to Remove Allegedly Infringing Material in***
               ***Response to M&G's Complaint***

2

3           Amazon acted expeditiously to remove allegedly infringing product offerings as soon as

4      it received notice when this lawsuit was filed.  Phan Decl. ¶¶ 20, 21.  Under the DMCA, a

5      service provider satisfies the safe harbor requirements set forth in 17 U.S.C. § 512(c)(1)(A) and

6      (C) if it acts expeditiously to remove (or disable access to) infringing or allegedly infringing

7      material upon notice or knowledge of the claimed or actual infringement.  That occurred here.

8           **f.**    ***Amazon Lacked the Ability to Control Allegedly Infringing Activity***

9           Amazon did not have the practical ability to control the allegedly infringing conduct.  A

10     service provider satisfies 17 U.S.C. § 512(c)(1)(B) of the DMCA if it lacks either the right <u>or</u> the

11     ability to control infringing activity. An accused infringer does not have the ability to control a

12     direct infringer by merely having "the ability . . . to remove or block access to materials posted

13     on its website or stored in its system."  *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 858

14     (C.D. Cal. 2006) (internal quotation marks and citation omitted); *see also Io Grp., Inc. v. Veoh*

15     *Networks, Inc.*, 586 F. Supp. 2d 1132, 1136 (N.D. Cal. 2008) (concluding that the term "right

16     and ability to control" has the same meaning under the DMCA as it does in connection with

17     vicarious copyright liability).  Rather, the accused infringer must have the "practical ability" to

18     "stop or limit the directly infringing conduct."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d

19     1146, 1173 (9th Cir. 2007).  In other words, "in order to have the 'right and ability to control,'

20     the service provider must 'exert[] substantial influence[8] on the activities of users.'"  *UMG*

21     _____

22          [8] A service provider does not exert substantial influence over the activities of users
simply because: (1) the infringing content resides on the service provider's system; (2) the

23     service provider had the ability to remove such material; (3) the service provider could have
implemented, and did implement, filtering systems; and (4) the service provider could have

24     searched for potentially infringing content. *UMG Recordings, Inc. v. Shelter Capital Partners*
*LLC*, 718 F.3d 1006, 1030 (9th Cir. 2013).  Rather, the service provider must do "something

25     more," such as impose "high levels of control over activities of users."  *Id.* (internal quotation
marks and citation omitted).

26

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

79206620.1 0053837- 00429

1   *Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1030 (9th Cir. 2013)

2   (alterations in original; citation omitted).

3       For example, in *Perfect 10 v. Google, Inc.*, the Central District of California analyzed

4   whether Google had the ability to control copyright infringement that arose from users who

5   accessed infringing websites through its search engine.  416 F. Supp. 2d 828.  In explaining why

6   Google did not have the ability to control infringing activity, the court noted that "Google

7   software lacks the ability to analyze every image [it receives], compare each image to all other

8   copyrighted images that exist in the world . . ., and determine whether a certain image . . .

9   infringes someone's copyright."  *Id.* at 858.  Accordingly, the court concluded that Google

10  lacked the practical ability to police the infringing conduct.  *Id.*  The Ninth Circuit affirmed this

11  conclusion on appeal.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1174 ("Without image-

12  recognition technology, Google lacks the practical ability to police the infringing activities of

13  third-party websites.").

14      Here, Amazon, like Google, does not have the ability to analyze all the images it receives

15  from third parties, compare these images to all other copyrighted images that exist in the world,

16  and determine whether each image infringes someone's copyright interest.  Phan Decl. ¶ 25.

17  Rather, Amazon simply provides an online platform that allows third-party sellers to upload

18  content that is then used to generate product detail pages and advertisements in an automated

19  manner.  *Id.* ¶¶ 2, 6; Gemmell Decl. ¶¶ 3, 4; Shanbhag Decl. ¶¶ 2, 3.  Amazon's operation of this

20  platform does not give it the right and ability to control its users.  *Hendrickson v. Amazon.com,*

21  *Inc.*, 298 F. Supp. 2d 914, 918 (C.D. Cal. 2003) (finding that Amazon did not have the right and

22  ability to control its users because "Amazon merely provided the forum for an independent third

23  party seller to list and sell his merchandise"); *Corbis*, 351 F. Supp. 2d at 1110 (concluding that

24  "Amazon did not have the right or ability to control vendor sales").

25      In short, because Amazon (1) did not actively participate in the alleged copying and

26  (2) would be protected by the DMCA safe harbor even if it did actively participate in the alleged

MOTION FOR SUMMARY JUDGMENT - 16

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1  copying (which it did not), Amazon's motion for summary judgment with respect to the

2  copyright infringement claim should be granted.

3      **3.    Amazon Is Not Liable Under 17 U.S.C. § 1202 Because It Did Not
           Intentionally Remove or Alter Copyright Management Information.**
4

5      The DMCA generally prohibits the intentional removal or alteration of copyright

6  management information. 17 U.S.C. § 1202(b). The DMCA also prohibits the distribution or

7  importation of copyright management information with knowledge that the copyright

8  management information has been removed or altered without the authority of the copyright

9  owner. *Id.* M&G alleges that Amazon violated the DMCA by intentionally removing or altering

10  copyright management information from M&G's copyrighted images. Dkt. #1 ¶ 39. In response

11  to an interrogatory seeking the factual basis for M&G's allegation that *Amazon* intentionally

12  removed or altered the copyright management information, however, M&G's circular reasoning

13  falls short of actual evidence, and completely ignores the involvement of third-party sellers who

14  provided the images at issue. *See* Power Decl., Ex. A at p. 8 (Response to Interrogatory No. 8)

15  ("[A]s the only substantive alteration of M&G's materials was the removal of M&G's copyright

16  management information, the only reasonable conclusion that could be reached is that Amazon

17  did so with the intention of concealing M&G's copyright rights in order to facilitate copyright

18  infringement."). There is no evidence that Amazon removed or altered copyright management

19  information, or that Amazon distributed or imported allegedly infringing pillowcases with

20  knowledge that copyright management information had been removed. M&G's claim under the

21  DMCA fails as a matter of law, there is no material fact in dispute, and Amazon is entitled to

22  summary judgment on M&G's copyright information removal claim.

23  **C.    Amazon Is Not Liable for False Designation of Origin Under the Lanham Act**

24      Amazon is not liable for trademark infringement based on alleged false designation of

25  origin under the Lanham Act, 15 U.S.C. §1125(a)(1)(A), for at least three reasons. *First*, as a

26  threshold matter, because M&G's Lanham Act claim overlaps directly with its copyright claim,

MOTION FOR SUMMARY JUDGMENT - 17

1   and because the copyright laws provide an adequate remedy, the Lanham Act claim should be

2   dismissed outright. *Second*, even if the Court reaches the claim, there is no evidence of any

3   "use" of a false designation of origin that is attributable to Amazon. *Finally*, *arguendo*, even if

4   Amazon had "used" a false designation of origin (which it has not), the asserted "use" is

5   permitted under *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102-03 (2d Cir. 2010).

6       **1.**     **M&G's Trademark Claim Is Precluded Because It Is Based on the Same Materials That Give Rise to M&G's Copyright Claim**

7

8       Because M&G's copyright claim fails, M&G's attempt to hold Amazon liable under the

9   Lanham Act for alleged use of precisely the same images and materials it seeks to hold Amazon

10   liable for under the Copyright Act is dispositive of M&G's Lanham Act claim. *See Summit*

11   *Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1438 (9th Cir. 1993) (Lanham Act

12   cannot be used to invade "spheres protected by, or intentionally left unprotected by, copyright

13   and patent law."); *see also* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*

14   § 1.01[D][2], at 1-88.12 (2015) ("[C]ourts have long limited application of the Lanham Act so as

15   not to encroach on copyright interests." (footnote omitted)); *Shaw v. Lindheim*, 919 F.2d 1353,

16   1364-65 (9th Cir. 1990) ("We decline to expand the scope of the Lanham Act to cover cases in

17   which the Federal Copyright Act provides an adequate remedy."); *Sybersound Records, Inc. v.*

18   *UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (dismissing claim by construing the Lanham

19   Act to "avoid overlap between the Lanham and Copyright Acts").

20       M&G's Lanham Act claim is based on Amazon's alleged "wholesale copying of all of

21   M&G's marketing materials" and specifically identifies a "screen shot of Amazon's website

22   where Milo & Gabby LLC's Trademark was clearly readable." Power Decl., Ex. A at p. 13

23   (Response to Interrogatory No. 16).[9] But M&G's copyright infringement claim is based on the

---

24       [9] M&G contends that Amazon violated its rights in two marks: "MILO & GABBY;
COZY COMPANIONS" (a mixed word and design mark registered as U.S. Trademark No.

25   3291697 (the "Design Mark")); and "MILO & GABBY" (a character mark registered as U.S.
Trademark No. 4644732 (the "Word Mark")). *See* Power Decl. ¶ 10, Ex. A at p. 13 (pictorial

26                                                  (continued . . .)

MOTION FOR SUMMARY JUDGMENT - 18

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1  very same allegedly unauthorized distribution and display by Amazon of M&G's "copyrighted

2  works" such as its "products and promotional materials" and "images on the labels" of products.

3  Dkt. #1 ¶¶ 28-31. As such, because M&G's claim under the Copyright Act necessarily fails,

4  M&G's Lanham Act claim should likewise be dismissed. *Dastar Corp. v. Twentieth Century*

5  *Fox Film Corp.*, 539 U.S. 23, 33 (2003) (rejecting plaintiff's proposed interpretation of Lanham

6  Act that would "cause[] the Lanham Act to conflict with the law of copyright, which addresses

7  that subject specifically").

8  **2. Amazon Did Not "Use" a False Designation of Origin**

9  Even if the Court does not summarily dismiss M&G's Lanham Act claim as precluded in

10  light of M&G's claim under the Copyright Act, M&G's Lanham Act claim still fails. To be

11  liable for direct trademark infringement under 15 U.S.C. § 1125(a)(1)(A) based on a false

12  designation of origin, the defendant must "use" a false designation of origin in a manner that is

13  likely to cause confusion, mistake, or deception. An entity does not "use" a mark or a false

14  designation of origin by merely providing a forum in which a third-party vendor may display the

15  mark or false designation of origin in connection with an offer to sell goods. *See Fonovisa, Inc.*

16  *v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996); *Hard Rock Cafe Licensing Corp. v.*

17  *Concession Servs., Inc.*, 955 F.2d 1143 (7th Cir. 1992). For example, in both *Fonovisa* and *Hard*

18  *Rock Cafe*, the Ninth and Seventh Circuits, respectively, analyzed whether flea market operators

19  were liable for *contributory* trademark infringement based on infringing use of a mark by third-

20

21  (. . . continued)
   references of the marks are included in the declaration). Of note here, M&G offers no evidence
22  of any alleged use of the Design Mark. Instead, M&G asserts alleged use of the Word Mark via
   an image, provided by a third-party seller, that allegedly depicts M&G's marketing materials and
23  reflects the text "Milo & Gabby." That Word Mark was not registered until November 25, 2014,
   over a year after the lawsuit was filed (and the mark allegedly used), and thus there was no
24  presumption of validity at the time of alleged use. *Id.* ¶ 11, Ex. B; *see Toho Co. v. Sears,*
   *Roebuck & Co.*, 645 F.2d 788, 789 (9th Cir. 1981) (without federal registration, no presumption
25  of validity).

26

MOTION FOR SUMMARY JUDGMENT - 19

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone* (206) 624-0900

1 party vendors who sold counterfeit items at the flea market. The plaintiffs were forced to allege

2 *contributory* (rather than direct, as asserted here) trademark infringement as the operators—who

3 provided only a forum for the third-party vendors—*did not themselves use the mark*. All

4 prohibited uses of the marks were attributable only to the third-party vendors.

5   Here, like the operators in *Fonovisa* and *Hard Rock Cafe*, Amazon merely provides a

6 platform where third-party sellers may display information regarding the origin of their goods.

7 By providing this platform to numerous third-party sellers, Amazon does not "use" any allegedly

8 false designation of origin supplied by a third-party seller. Rather, such use is properly

9 attributable to the third-party sellers. The facts here reflect that third-party sellers supplied all

10 images, product descriptions, and the products themselves. Phan Decl. ¶¶ 15, 16. Further, in the

11 limited instances in which one third-party seller (FAC System LLC) used the FBA service to

12 direct shipment of allegedly infringing pillowcases, there is no evidence that the visible external

13 packaging bore M&G's mark. *Id.* ¶ 18. There is no dispute that the products fulfilled by

14 Amazon were shipped in *shipping* boxes with Amazon's marks to indicate that the products were

15 shipping from an Amazon facility. There is simply no support in the law for M&G's theory that

16 identifying Amazon as the shipper, via external packaging on a shipping box, constitutes false

17 designation of origin of the goods. Accordingly, Amazon cannot be liable for direct trademark

18 infringement under 15 U.S.C. § 1125(a)(1)(A).

19   Nor is Amazon liable for *contributory* trademark infringement.[10] As set forth by the

20 Ninth Circuit, contributory trademark liability requires that the defendant "(1) intentionally

21 induce[ ] another to infringe on a trademark or (2) continue[ ] to supply a product knowing that

22 the recipient is using the product to engage in trademark infringement." *Fonovisa*, 76 F.3d at

23    [10] The Court plainly struck all contributory and induced infringement theories from the
24 case under the Order Granting Defendant's Motion to Dismiss for Failure to State a Claim in Part. *See* Dkt. #13 at p. 18. M&G's allegations only speak to *direct* action by Amazon, but in an
effort to secure summary judgment comprehensively, Amazon also explains why M&G's claim
25 would also fail under a theory of induced infringement.

26

MOTION FOR SUMMARY JUDGMENT - 20

1  264.  Here, there is no evidence that Amazon (1) intended to induce a third-party seller to

2  infringe a Milo & Gabby mark; or (2) continued to allow a third-party seller access to the

3  amazon.com website *after* Amazon knew that the seller was using the mark to engage in alleged

4  trademark infringement.  Indeed, all evidence shows that Amazon seeks to prevent the sale of

5  infringing goods on the amazon.com website.  *See* Phan Decl. ¶¶ 6-8, 21, 22.  Because Amazon

6  (1) has not "used" any allegedly false designation of origin; and (2) cannot be held contributorily

7  liable for a false designation of origin allegedly made by third-party sellers, Amazon has not

8  violated 15 U.S.C. § 1125(a)(1).

9       **3.      Amazon, as an Online Intermediary That Takes Reasonable Steps to Prevent
                   the Sale of Counterfeit Goods on Its Website, Cannot Be Held Liable for**
10      **Trademark Infringement Under 15 U.S.C. § 1125(a)(1)(A)**

11          Even if the Court were to determine that a disputed fact issue exists regarding Amazon's

12  "use" of an allegedly false designation of origin (when a third-party seller displays inaccurate

13  information regarding the origin of its goods on amazon.com), such use is permitted under the

14  rationale set forth by the Second Circuit in *Tiffany*, 600 F.3d 93.[11]

15          In *Tiffany*, the Second Circuit dealt with whether an online intermediary that facilitates

16  transactions between a buyer and seller (eBay) could be held liable for trademark infringement

17  based on its alleged use of a mark held by the jewelry seller Tiffany.  As an initial matter, the

18  *Tiffany* court held that because trademark law does "not prevent one who trades a branded

19  product from accurately describing it by its brand name, so long as the trader does not create

20  _____

21      [11] Although the trademark infringement claim in *Tiffany* was brought under 15 U.S.C. § 1114
    (because Tiffany's mark was registered), the analysis does not change when the trademark
    infringement claim is brought under 15 U.S.C. § 1125(a)(1)(A) (for unregistered marks).  As
22  explained in *McCarthy on Trademarks and Unfair Competition*, "[w]hen [15 U.S.C. §
    1125(a)(1)(A)] is used as a federal vehicle for assertion of traditional claims of infringement of
23  trademarks, . . . the courts have used as substantive law the traditional rules of trademarks and
    unfair competition law.  The clear message of the U.S. Supreme Court's 1992 *Taco Cabana* case
24  is that the general rules of trademark validity and infringement are to be applied to infringement
    claims brought under [15 U.S.C. § 1125(a)(1)(A)]."  J. Thomas McCarthy, *McCarthy on*
25  *Trademarks and Unfair Competition* § 27:18, at 27-37 (4th ed. 2014).

26

MOTION FOR SUMMARY JUDGMENT - 21

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1   confusion by implying an affiliation with the owner of the product," eBay's use of the mark to

2   sell *genuine* Tiffany goods was lawful.  *Id.* at 103 (internal quotation marks and citation

3   omitted).  Noting that "'eBay consistently took steps to improve its technology and develop anti-

4   fraud measures as such measures became technologically feasible and reasonably available,'" the

5   court further held that eBay could not be held liable for direct trademark infringement based on

6   use of Tiffany's mark in connection with the sale of *counterfeit* jewelry simply "because eBay

7   cannot guarantee the genuineness of all of the purported Tiffany products offer on its website."

8   *Id.* at 100, 103 (quoting trial court).  "To impose [such] liability," the court reasoned, "would

9   unduly inhibit the lawful resale of genuine Tiffany goods."  *Id*. at 103.

10      The California Court of Appeal came to the same conclusion in *Tre Milano, LLC v.*

11  *Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. Ct. App. Aug. 22, 2012) (attached at

12  Ex. E to Power Decl.).  In that case, the plaintiff accused Amazon of trademark infringement

13  based on Amazon's alleged use (on its website) of Tre Milano's mark in connection with the sale

14  of allegedly counterfeit Tre Milano Hair Straighteners.  *Id.* at *1.  The straighteners were

15  allegedly sold via the amazon.com website by third-party sellers and shipped either by Amazon

16  (through the FBA service) or by the third-party sellers themselves.  *Id.*  The court, citing *Tiffany*,

17  held that Amazon did not infringe Tre Milano's trademark rights.  *Id.* at *12.

18      Here, like the defendant in *Tiffany*, Amazon, as the provider of an online retail platform

19  that facilitates transactions between third-party sellers and buyers, goes to great lengths to weed

20  out counterfeit products from its website.  But even if there were a disputed factual issue about

21  whether Amazon "uses" any allegedly false designation of origin (merely by providing a forum

22  that allows third-party sellers to supply information regarding their products), such alleged "use"

23  does not create a basis for liability under a theory of direct infringement.  *See Tiffany*, 600 F.3d

24  at 103 (finding no grounds for direct infringement).  Accordingly, summary judgment dismissing

25  M&G's claim of trademark infringement under 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act is

26  warranted.

MOTION FOR SUMMARY JUDGMENT - 22

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1 **D.  Amazon Is Not Liable for Direct Patent Infringement Because Amazon Has Not "Sold" or "Offered to Sell" Any Allegedly Infringing Pillowcases**

2

3        To state a claim of direct patent infringement, M&G must establish ownership of the

4 patents and show that Amazon, the accused infringer, without authorization, made, used, offered

5 to sell, sold, or imported the patented invention.[12]  35 U.S.C. § 271(a).  Here, M&G bases its

6 claim of direct patent infringement on Amazon's purported "offer to sell" or "sale" of allegedly

7 counterfeit Milo & Gabby, LLC products.  *See* Dkt. #1 ¶ 1 ("This is a complaint for violations of

8 various . . . intellectual property laws arising from Defendant's sales of products that constitute

9 inferior knock-off duplicates of Plaintiff's protected products.").  But there is no evidence that

10 Amazon has ever "sold" or "offered to sell" such products within the meaning of 35 U.S.C.

11 § 271(a).  Indeed, the evidence reflects otherwise.

12        To "sell" or "offer to sell" goods, one must transfer or offer to transfer *title* to those

13 goods.  U.C.C. § 2-106(1) ("A 'sale' consists in the passing of *title* from the seller to the buyer

14 for a price." (emphasis added)); *see Ecodyne Corp. v. Croll-Reynolds Eng'g Co.*, 491 F. Supp.

15 194, 197 (D. Conn. 1979) (noting that the term "'sale' . . . connotes the formation of a contract

16 under which the seller . . . *transfers to the buyer title* . . . to property" in dismissing claims of

17 patent infringement (emphasis added; internal quotation marks and citation omitted)).  It is well-

18 ───────────────

19     [12] In the Complaint, M&G identifies five U.S. Design Patents (U.S. Design Patent Nos. D520,798; D521,299; D521,792; D523,677; and D551,889).  Dkt. #1.  Exhibit G to the

20 Complaint, however, includes one additional patent, U.S. Design Patent No. D545,605 (the "'605 Patent").  *Id.*  In M&G's Preliminary Infringement Contentions served on September 15, 2014, and M&G's Supplemental Exhibit to Plaintiff's [sic] Infringement Contentions, served on

21 September 17, 2014, M&G asserted infringement contentions only with respect to the five patents identified in the Complaint.  Power Decl. ¶ 12, Exs. C, D.  In its Non-Infringement

22 Contentions, Amazon specifically stated that to the extent M&G later seeks to assert infringement claims related to the '605 Patent, Amazon has been prejudiced.  *Id.*  In response to

23 discovery, M&G now contends that all six patents were infringed.  *Id.* ¶ 12, Ex. A (Response to Interrogatory No. 2).  As such, without waiving its right to argue that M&G waived its right to

24 assert infringement of the '605 Patent by failing to serve infringement contentions, Amazon seeks summary judgment on the claim of patent infringement as to all identified patents,

25 including the '605 Patent at Exhibit G to the Complaint.

26

MOTION FOR SUMMARY JUDGMENT - 23

established law that a broker or online intermediary that merely facilitates the direct transfer of title to an article from a third-party seller to a purchaser has not "sold" the article. *Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*, 472 F. Supp. 2d 385, 409 (E.D.N.Y. 2007) ("When parties act as intermediaries for a transaction and do not buy and resell the commodities, no sale between them has occurred."); *Prima Int'l Trading v. Wyant*, No. 6:07-CV-338-REW, 2009 WL 722609, at *6 (E.D. Ky. Mar. 17, 2009) (concluding that a broker is not a "seller" under the Uniform Commercial Code); *Oscar Mayer Corp. v. Mincing Trading Corp.*, 744 F. Supp. 79, 83 (D.N.J. 1990) ("As [the broker] never had title … it could not 'sell' them.").

For instance, in *Tiffany*, Tiffany alleged that eBay "sold" counterfeit Tiffany jewelry on its website, even though the counterfeit goods were listed on eBay's website by third-party sellers. *Tiffany*, 600 F.3d at 102-03. Consistent with fundamental contract law principles, the Second Circuit rejected this argument, concluding that "eBay did not itself sell counterfeit Tiffany goods; only the fraudulent vendors did." *Id.* at 114; *see also Hendrickson*, 298 F. Supp. 2d at 915 ("[A]ll of the evidence points to the fact that [the third-party seller], not Amazon, was the actual seller."). The same reasoning applies here. Because Amazon was not the seller of record for any of the allegedly infringing pillowcases, and had no ownership interest or legal title to any of the allegedly infringing pillowcases, Amazon could not "sell" or "offer to sell" the allegedly infringing pillowcases. M&G makes only conclusory arguments and has no evidence to the contrary. In sum, because M&G has not shown, and cannot show, that Amazon offered or sold the allegedly infringing products, Amazon is entitled to summary judgment of non-infringement.

## V. CONCLUSION

For all the foregoing reasons, Amazon's motion for summary judgment dismissing M&G's remaining claims should be granted.

MOTION FOR SUMMARY JUDGMENT - 24

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1      DATED:  June 11, 2015

2

3                                  STOEL RIVES LLP

4

5                                  s/ Vanessa S. Power
                                   Vanessa Soriano Power, WSBA No. 30777

6                                   Brian C. Park, WSBA No. 25584
                                   Nathan C. Brunette (*Pro Hac Vice)*

7                                   600 University Street, Suite 3600
                                   Seattle, WA  98101

8                                   Telephone:  (206) 624-0900
                                   Facsimile:  (206) 386-7500

9                                   Attorneys for Defendant
                                   AMAZON.COM, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR SUMMARY JUDGMENT - 25

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*