UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MILO & GABBY, LLC, and KAREN KELLER, an individual, | ) CASE NO. C13-1932RSM |
| ) | |
| Plaintiffs, | ) ORDER GRANTING IN PART AND |
| ) | DENYING IN PART DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| ) | |
| AMAZON.COM, INC., | ) |
| ) | |
| Defendant. | ) |

## I.        INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment on the remaining claims in this action. Dkt. #30. Defendant, Amazon.com, Inc. ("Amazon"), argues that it is entitled to summary judgment on Plaintiffs' remaining claims for direct patent infringement, direct copyright infringement, false designation of origin under the Lanham Act, and violation of the Digital Millennium Copyright Act, primarily because the alleged infringing actions were committed by third-party vendors and not Defendant. *Id.* Plaintiffs argue in opposition that Defendant is liable under several theories of law, including vicarious liability, such that summary judgment is precluded. Dkt. #36. Having reviewed the parties' briefing, and having determined that no oral argument is necessary on this motion, the Court disagrees with Plaintiffs in part and GRANTS IN PART and DENIES IN PART Defendant's motion.

ORDER
PAGE - 1

## II.     BACKGROUND[1]

Plaintiff MILO & GABBY, LLC is a Washington State limited liability company that designs and sells animal-shaped pillow cases, among other accessories and bedding products. Plaintiff Karen Keller and her husband are the founders and product designers of Milo & Gabby, LLC ("Milo & Gabby"). Dkt. #1 at ¶ 7. According to Ms. Keller, the couple's four children and two family pets inspired the Kellers to create the Cozy Companion Pillowcases product line for Milo & Gabby. Dkt. #1 at ¶ 7. The line consists of eight animal shaped pillowcases that function as a combination between a pillow and a stuffed animal.

Plaintiffs are the authors and owners of various U.S. Copyrights and U.S. Design Patents. *See id.* at ¶ 10. On September 11, 2007, the Milo & Gabby design mark was registered with the U.S. Patent and Trademark office and was assigned U.S. Trademark Registration Number 3291697. *Id.* at ¶ 8. In addition, Milo & Gabby's website and marketing images are protected by valid U.S. copyrights. *Id.* at ¶ 10.

For several years, Milo & Gabby has designed, sold, and distributed its products to retailers and e-tailers throughout the United States and internationally. *Id.* at ¶ 11. During this time, Milo & Gabby's animal-themed children's accessories have seen commercial success. *Id.* In 2012, Milo & Gabby entered into an exclusive license arrangement in Asia, and since then the company has made promising gains. *Id.* Milo & Gabby aims to further expand its operations by entering into license agreements throughout North America. *Id.* at ¶ 12. However, Milo & Gabby claims these efforts were halted when Amazon.com allegedly began selling direct knock-off copies of Milo & Gabby's Cozy Companion Products. *Id.* at ¶ 13.

---

[1]  The Court draws this factual background from Plaintiffs' Complaint and Defendant's motion for summary judgment, as Plaintiffs failed to set forth their own separate statement of facts in opposition to the instant motion. *See* Dkt. #36.

Amazon is a company that operates a widely used internet service retail website at http://www.amazon.com. Dkt. #35 at ¶ 2. Amazon.com enables third-party vendors to sell and distribute a variety of products to the public, while Amazon "fulfills" the orders through Amazon.com. Dkt. #35 at ¶¶ 2-3 and 11.

When a third-party seller wants to offer a new product for sale on the Amazon.com platform, the third-party seller is responsible for sending Amazon, via an automated file upload system, content related to the new product, such as a product description, an image of the product, and the product's price. *Id.* at ¶ 5. This content is used to automatically generate a "product detail page" and, in some instances, to create advertisements related to the new product. *Id.* at ¶ 6; Dkt. #33 at ¶ 4; and Dkt. #32 at ¶ 2. The third-party seller is responsible for the uploaded content, and specifically represents and warrants that it has the right to grant Amazon a license to use all content, trademarks, and other materials provided by it. Dkt. #35, Ex. A at ¶¶ 4-5 & Definitions and Ex. B. Under Amazon's Intellectual Property Violations Policy, third-party sellers are responsible for ensuring that the products they offer for sale are legal. *Id.* at ¶ 9 and Ex. D. With respect to images, third-party sellers agree that it is their responsibility to "ensure that [they] have all the necessary rights for the images [they] submit." *Id.* at ¶ 10 and Ex. E.

Third-party sellers may ship their products to customers directly or, for a fee, use the "Fulfillment by Amazon" ("FBA") service. Dkt. #34 at ¶ 2. Third-party sellers who use Amazon's FBA service retain legal title to their products, while Amazon provides fulfillment services for the products, such as storage and shipping. *Id.* at ¶¶ 3-4.

Plaintiffs allege that Amazon offered and sold infringing pillowcases via Amazon.com, using their marks and copyrighted images in the pillowcase offerings. Plaintiffs contends that

Amazon is "the real 'seller' of the knock-off products" because: (1) the "products are advertised on the amazon.com domain"; (2) "[p]ayment is made directly to Amazon"; (3) "Amazon issues the invoice and tracking information"; (4) "Amazon ships the products in a box that bears the 'Amazon' logo"; and (5) "Amazon broadcasts email advertisements from its own account (not the manufacturer's) offering the knock-off products." Dkt. #11 at 3.

However, according to Amazon, all allegedly infringing pillowcases at issue in this case were offered and sold by third-party sellers. Dkt. #35 at ¶ 15. Amazon is not the seller of record for any of the allegedly infringing pillowcases. *Id.* and Dkt. #1, Ex. C. The content for the allegedly infringing pillowcases (including product name, description, and images) displayed by Amazon was provided by third-party sellers. Dkts. #35 at ¶ 16; #33 at ¶ 3; and #32 at ¶ 3. Amazon did not actively copy any of Plaintiffs' images. Dkt. #35 at ¶ 16. Nor did Amazon alter, modify, or remove any copyright registration information, or other information, related to any images or content supplied by third-party sellers in conjunction with third-party seller offerings of the allegedly infringing pillowcases. *Id.* In fact, all images and other content provided to Amazon by third-party sellers did not contain any visible patent, copyright, or trademark registration information. *Id.* Amazon did provide FBA services to one of the third-party sellers (FAC System LLC) that offered allegedly infringing pillowcases. *Id.* at ¶ 17.

Upon receipt of the instant lawsuit in October 2013, Amazon investigated Plaintiffs' allegations and removed within days the allegedly infringing pillowcase offerings. Dkt. #35 at ¶ 20. During the course of this case, additional third-party sellers have offered allegedly infringing pillowcases. *Id.* at ¶ 21. As soon as Amazon learned of, or was made aware of, the additional allegedly infringing offerings, Amazon also promptly removed the offerings. *Id.*

On October 24, 2013, Plaintiffs filed the instant lawsuit alleging that Amazon was using Plaintiffs' intellectual property to wrongfully market, sell, and distribute inferior-quality knockoffs of Plaintiffs' animal-shaped pillowcases on the amazon.com website. On April 11, 2014, the Court granted Defendant's Rule 12(b)(6) motion and dismissed Plaintiffs' claims for unfair competition under Washington's Consumer Protection Act; right of publicity; and trademark counterfeiting. Dkt. #13. The Court also struck Plaintiffs' claim for patent infringement based on any allegation of induced, contributory, or willful patent infringement, as well as Plaintiffs' claim for indirect copyright infringement. *Id.* The parties have since attempted to resolve this matter and have agreed that a *Markman* hearing is not necessary as the patents at issue are design patents. Accordingly, the instant motion is now ripe for review.

## III. DISCUSSION

### A. Plaintiffs' Overlength Brief

As an initial matter, the Court addresses Plaintiffs' overlength brief which was filed without permission of the Court. This Court's Local Rules specifically provide that motions for summary judgment and briefs in opposition thereto shall not exceed 24 pages in length. LCR 7(e)(3). Further, the Rules provide that, while disfavored, parties may seek permission to file overlength briefs, and such requests must be filed three days prior to the date the underlying brief is due. LCR 7(f). No such permission was sought by Plaintiffs in this case. Rather, Plaintiffs simply filed a 32-page opposition brief. Dkt. #36. Because Plaintiffs did not seek permission to file eight extra pages of briefing, the Court refuses to consider certain text not contained within the applicable page limits. LCR 7(e)(6). In this case, in an effort to review the substantive arguments made by Plaintiffs, the Court will exclude from consideration the first five pages of the brief, which encompass the introduction, summary judgment standard

and a motion to strike certain of Defendant's declarations supporting its motion for summary judgment. Dkt. #36 at 1-5. The Court also will not consider the final page of the brief, which consists of a one-sentence conclusion. DKt. #36 at 2. The Court will consider Plaintiffs' substantive arguments contained at pages 5-31 of their brief.[2]

**B. Plaintiffs' Motion to Strike**

Because Plaintiffs' motion to strike will not be considered, the Court will review all evidentiary material presented by Defendant, and will afford it due consideration as discussed herein.

**C. Legal Standard on Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248. A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983). [T]he issue of material fact required . . . to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to

---

[2]  The Court has also considered Plaintiffs' supplemental authority submitted on July 7, 2015. Dkts. #41 and #42.

require a jury or judge to resolve the parties' differing versions of the truth at trial. *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**D.  Direct Copyright Infringement**

Plaintiffs allege that Amazon publicly displayed Plaintiffs' copyrighted images on the Amazon.com website and distributed allegedly infringing goods with Plaintiffs' copyrighted images on the product labels in violation of established copyright laws. Dkt. #1 at ¶¶ 28-31. Defendant argues that this claim must be dismissed because there is no evidence that Amazon actively participated in, or directly caused, the alleged copying of Plaintiffs' images, and even if there was such evidence, Amazon is immune from liability under the Section 512(c) safe harbor provision of the Digital Millenium Copyright Act ("DMCA"). The Court agrees with Defendant.

*1.  Direct Copyright Infringement*

"'To establish a claim of copyright infringement by reproduction, the plaintiff must show ownership of the copyright and copying by the defendant.'" *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1066-67 (9th Cir. 2014) (quoting *Kelly v. Arriba Soft Corp.*,

336 F.3d 811, 817 (9th Cir. 2003)); *see also* 17 U.S.C. §§ 106(1), 501(a). Accordingly, infringement of the reproduction right requires "copying *by* the defendant," which comprises a requirement that the defendant cause the copying. *Fox Broad. Co.*, 747 F.3d at 1067 (emphasis added; citations omitted). In this case, there is no evidence in the record that Amazon actively reviewed, edited, altered or copied Plaintiffs' images. *See* Dkt. #35 at ¶ ¶ 17-18. Rather, the content of the website was provided by a third-party vendor, and was handled in an entirely automated manner to generate product detail pages or ads. Dkts. #35 at ¶ 6; #33 at ¶ 3; and #32 at ¶ 2. Plaintiffs respond with two arguments – first, that Defendant is vicariously liable for the third-party's infringement, and second, that Defendant is liable for direct infringement because it accepts and stores the infringing images. Dkt. #36 at 7-21.

The Court first addresses Plaintiffs' vicarious liability arguments. Dkt. #36 at 7-12 and 14-21. A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from *another's* infringing activity and "has the right and ability to supervise" the infringing activity. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citations omitted). "Financial benefit exists where the availability of infringing material 'acts as a "draw" for customers.'" *Id.* at 1078 (citations omitted).

Plaintiffs have never raised this theory of vicarious liability in their Complaint, nor have they alleged any facts in their Complaint providing notice to Defendant that they intended to advance such a theory. *See* Dkt. #1. Rather, Plaintiffs have alleged that Amazon, "without authorization, is distributing copies of Milo & Gabby's copyrighted works as the Amazon knock-offs and as labels on the Amazon knock-offs. . . ., is publicly displaying numerous Milo & Gabby copyrighted images on the amazon.com website. . . ., [and] is distributing numerous Milo & Gabby copyrighted images on the labels of its Amazon knock-off products. . . ., [in]

violation of the U.S. Copyright Act, 15 U.S.C. § 501, *et. seq.*"  Dkt. #1 at ¶ ¶ 29-32; *see also* Dkt. #1 at ¶ ¶ 7-24.  After the Court previously examined this copyright infringement claim and dismissed it to the extent the claim was based on a theory of indirect trademark infringement, Dkt. #13, the only remaining basis for the claim has been direct infringement.  Plaintiffs never moved to amend the Complaint to add a claim for vicarious infringement or seek clarification that any theory of vicarious infringement had not been subsumed in the Court's ruling on indirect infringement.  Accordingly, the Court will not consider Plaintiffs' vicarious liability arguments.  *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 965 (9th Cir. 2006) (finding that a district court need not address allegations raised for the first time in response to a motion for summary judgment if the plaintiff's "pleadings did not provide sufficient notice of those allegations.");  *Williams v. Fed. Express Corp.*, 2013 U.S. Dist. LEXIS 72722 at *25 (W.D. Wash. May 22, 2013) (dismissing a claim on the basis that a plaintiff may not assert new causes of action or theories of recovery for the first time in an opposition to a motion for summary judgment).

Thus, the Court turns to Plaintiffs' argument that Defendant's acceptance and storage of the alleged infringing images alone is enough to violate the Copyright Act.  Dkt. #36 at 12-14. Central to a finding of direct copyright infringement is the principle that a defendant must "actively" engage in one of the protected activities under the Copyright Act.  In *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp.2d 1146 (C.D. Cal. 2002), the Central District of California collectively examined cases involving liability and computer technology.  The *Perfect 10* Court noted that the Ninth Circuit and other District Courts have repeatedly rejected arguments of direct infringement where software or hardware schemes automatically produce copies of the allegedly infringing images and the defendants do not actively participate in such

activity.  *Perfect 10*, 213 F. Supp.2d at 1167-69.  The Court also noted that other courts had found direct infringement where the defendants were:

> encouraging subscribers to upload files onto its system, viewing the files in the upload file, and *then* moving the uploaded files into files generally available to subscribers.  This transformed the defendants from passive providers of a space to active participants in the process of copyright infringement.  The moving of the files, accomplished by employees constituted the distribution, and the display of those copies after the BBS's employees *placed* the files there violated the right of display.

*Perfect 10*, 213 F. Supp.2d 1168 (citations omitted; emphasis in original).

In the instant case, the Court finds the circumstances more akin to those where software or hardware schemes automatically produce copies of the allegedly infringing images and the defendants do not actively participate in such activity.  Indeed, the evidence in the record demonstrates that the content of the detail pages and advertisements was supplied by third-parties via an automated file upload system, and did not originate from Amazon.  Dkts. #33 at ¶ 4; #32 at ¶ ; and #35 at ¶ ¶ 6 and 17.  This evidence has gone un-refuted by Plaintiffs.  Thus, it does not appear that Amazon actively participated in the alleged copying of the digital images at issue.

Finally, the Court rejects Plaintiffs' contention that Amazon is liable for trademark infringement based on its sales and shipment of physical items.  Here, the evidence demonstrates that Amazon is not the seller of the alleged infringing products.  *See* Dkt. #35 at ¶ 12.  Likewise, third-party sellers retain full title to and ownership of the inventory sold by the third party.  Dkt. #34 at ¶ 4.  Plaintiffs have provided no evidence to the contrary with respect to any specific third party involved with the products in this case.  Accordingly, the Court concludes that Amazon was not the seller of the products at issue here.  *Hendrickson v.*

*Amazon.com, Inc.*, 298 F. Supp.2d 914, 915 (C.D. Cal. 2003) (holding that under similar circumstances Amazon was an internet service provider for the third party and not a seller).

2.  *Safe Harbor Provision Under DMCA*

Amazon also asserts that even if there was an issue of fact with respect to its alleged copying of Plaintiffs' images, it would be immune from liability under the DMCA's safe harbor provision under Section 512(c).  Dkt. #30 at 10-17.  Plaintiffs respond that Amazon does not meet the statutory requirements for the safe harbor provision.  Dkt. #36 at 15.

In *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp.2d 1090 (W.D. Wash. 2004), this Court examined the safe harbor provision at issue here.  The Court explained:

> The DMCA safe harbors do not render a service provider immune from copyright infringement.  They do, however, protect eligible service providers from all monetary and most equitable relief that may arise from copyright liability.  Thus, even if a plaintiff can show that a safe harbor-eligible service provider has violated her copyright, the plaintiff will only be entitled to the limited injunctive relief set forth in 17 U.S.C. § 512(j).

> The DMCA "safe harbors provide protection from liability for: (1) transitory digital network communications; (2) system caching; (3) information residing on systems or networks at the direction of users; and (4) information location tools."

> To be eligible for any of the safe harbors, a service provider must meet a series of threshold conditions.  At the outset, a party seeking safe harbor must, in fact, be a "service provider" as that term is defined under the DMCA.  If it fits within that definition, the service provider must then show that it

>> (A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and

>> (B) accommodates and does not interfere with standard technical measures.

A service provider that does not meet these threshold conditions may not invoke the DMCA's safe harbor limitations on liability.

Once the threshold conditions have been met, a service provider must then satisfy the specific requirements for the particular safe harbor. Amazon asserts that it is entitled to protection for information residing on systems or networks at the direction of users. The § 512(c) safe harbor protects a service provider from liability for "infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider." To qualify for the § 512(c) safe harbor, a service provider must show that:

> (1) it has neither actual knowledge that its system contains infringing materials nor an awareness of facts or circumstances from which infringement is apparent, or it has expeditiously removed or disabled access to infringing material upon obtaining actual knowledge of infringement;

> (2) it receives no financial benefit directly attributable to infringing activity; and

> (3) it responded expeditiously to remove or disable access to material claimed to be infringing after receiving from the copyright holder a notification conforming with requirements of § 512(c)(3).

*Corbis*, 351 F. Supp.2d at 1098-99 (citations omitted). Thus, the Court must examine whether Amazon meets the safe harbor requirements in this case.

### a. Service Provider

For purposes of the § 512(c) safe harbor, a service provider is defined as "a provider of online services or network access, or the operator of facilities therefore." 17 U.S.C. § 512(k)(1)(B). As this Court has previously determined, [t]his definition encompasses a broad variety of Internet activities, and there is no doubt that Amazon fits within the definition." *Corbis*, 351 F. Supp.2d at 1100.

### b. Infringement Policies

Next, the Court determines whether Defendant meets the infringement policy requirement. The Ninth Circuit has held that the DMCA's infringement policy requirement has

ORDER
PAGE - 12

three prongs. *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004). In *Ellison*, the Court explained that to meet the requirement a service provider must: 1) adopt a policy that provides for the termination of service access for repeat copyright infringers in appropriate circumstances; 2) inform users of the service policy; and 3) implement the policy in a reasonable manner. *Id.* Amazon has satisfied each of these prongs.

First, Amazon has adopted a policy that provides for the termination of users who are repeat infringers. Dkt. #35 at ¶ ¶ 3, 4, 6-9 and 22 and Exs. A, C, D and E. Plaintiffs do not dispute this fact. Second, Amazon informs all third-party sellers of its policies. *Id.* Plaintiffs also do not dispute this fact. Third, Amazon has implemented its policy in a reasonable manner. It provides mechanisms for the filing of claims of infringement, a process for removal of infringing products, and processes for the permanent suspension of repeat offenders. Dkt. #35 at ¶ ¶ 22-24. Plaintiffs also do not dispute these facts. Thus, the Court finds Amazon has established that it has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers.

c. Standard Technical Measures

The Court also finds that Amazon does not interfere with standard technical measures used to identify and protect copyrighted works. The DMCA defines the term "standard technical measures" as "technical measures that are used by copyright owners to identify or protect copyrighted works" and (a) "have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process," (b) "are available to any person on reasonable and nondiscriminatory terms," and (c)

"do not impose substantial costs on service providers or substantial burdens on their systems or networks." 17 U.S.C. § 512(i)(2). Plaintiffs have not challenged Amazon's assertion that it meets this element. Accordingly, this element is satisfied. *See Corbis*, 351 F. Supp.2d at 1106 (finding that this element is established where the plaintiff did not challenge Amazon's assertion of compliance).

### d. Knowledge of Infringement

In order to qualify for protection under the safe harbor provision, Amazon must also show that it (1) does not have actual knowledge that the material or an activity using the material on the system or network is infringing, and (2) is not aware of facts or circumstances from which infringing activity is apparent. If a service provider does obtain either actual or apparent knowledge, it may still invoke the safe harbor if it acts expeditiously to remove or disable access to the infringing material. A notice of infringement constitutes evidence of the service provider's knowledge. Under the DMCA, the service provider may attempt to refute this knowledge by showing that the notice failed to substantially comply with the DMCA's notice requirements.

In the instant matter, Amazon presents evidence that it did not have actual notice of infringement prior to this case being filed. Dkt. #35 at ¶ 19. However, Plaintiffs also assert that Amazon did have notice. *See* Dkt. #31, Ex. A at *Response to Interrogatory No. 15*. Regardless of whether Plaintiffs can establish actual notice, the Court finds that Amazon acted expeditiously to remove the allegedly infringing material in response to the instant lawsuit. Dkt. #35 at ¶ 20-21. There is no evidence in the record to the contrary. Accordingly, the Court finds this element to be satisfied.

e.   <u>Right and Ability to Control Infringing Activity and Financial Benefit</u>

Finally, a service provider will be excluded from the 512(c) safe harbor if it (1) "has the right and ability to control" the infringing activity, and (2) receives "a financial benefit directly attributable to the infringing activity."  17 U.S.C. § 512(c)(1)(B).  Both elements must be met for the safe harbor to be denied.  *See* 3 NIMMER ON COPYRIGHT, § 12 12B.04[A][1], at 12B-50.

Amazon argues that it does not have the practical ability to control the allegedly infringing conduct.  Dkt. #30 at 15-17.  In order to have the "right and ability to control," the service provider must "exert[] substantial influence on the activities of users."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1030 (9th Cir. 2013).  However, a service provider does not have the practical ability to stop or limit infringing conduct simply because (1) the infringing content resides on the service provider's system; (2) the service provider had the ability to remove such material; (3) the service provider could have implemented, and did implement, filtering systems; and (4) the service provider could have searched for potentially infringing content.  *See UMG Recordings*, 718 F.3d at 1030 ("Such circumstances are not equivalent to the activities found to constitute substantial influence in *Cybernet* and *Grokster*.").  Rather, the law requires "something more."  *Id.*  In this case, the Court agrees with Amazon that Plaintiffs have failed to identify the "something more" such that Amazon had the *practical ability* to control infringement.

It is undisputed that "Amazon lacks the ability to analyze every image it receives from third party sellers, compare the submitted image to all other copyrighted images that exist in the world, and determine whether each submitted image infringes someone's copyright interest."  Dkt. #35 at ¶ 26.  As a result, Amazon lacks the ability to control the infringing activity.  *See*

*Hendrickson*, 298 F. Supp.2d at 918 (finding that Amazon did not have the ability to control its users); *Corbis*, 351 F. Supp.2d at 1110 (concluding that "Amazon did not have the right or ability to control vendor sales"). Because Amazon does not have the right and ability to control the infringing material, it is not necessary for this Court to inquire as to whether Amazon receives a direct financial benefit from the allegedly infringing conduct. *Corbis*, 351 F. Supp.2d at 1110. Accordingly, the Court finds that Defendant meets all of the requirements for protection under the Section 512(c) safe harbor provision.

### 3. Intentional Removal or Alteration of Copyrighted Material

Plaintiffs have also alleged that Amazon violated the DMCA by intentionally removing or altering copyright management information from their copyrighted images. Dkt. #1 at ¶ 39. Amazon asserts that there is no evidence that it has done so, and provides evidence to refute the accusation. *See* Dkts. #31, Ex. A, *Response to Interrogatory No. 8* and #35 at ¶ ¶ 6 and 18. While Plaintiffs argue that Amazon's assertions are unsupported, an argument with which the Court disagrees, Plaintiffs fail to point to any evidence in the record rebutting Amazon's assertions. Indeed, Plaintiffs ignore the basic tenet that on a motion for summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251. Accordingly, the Court rejects Plaintiffs' argument.

For all of these reasons, the Court dismisses Plaintiffs' copyright infringement claim in its entirety.

### E. False Designation of Origin

The Court next turns to Plaintiffs' claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). Dkt. #1 at ¶ ¶ 35-36.

*1. Claim Preemption*

Amazon first argues that Plaintiffs' Lanham Act claim should be dismissed because it is duplicative of the copyright claim. Dkt. #30 at 18-19. Lanham Act trademark claims that overlap with copyright claims are preempted when the Copyright Act provides an adequate remedy. *Dastar Corp. v. Twentieth Cent. Fox Corp.*, 539 U.S. 23, 34, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003); *Shaw v. Lindheim*, 919 F.2d 1353, 1364-65 (9th Cir. 1990). Plaintiffs respond that their trademark claim has been mischaracterized by Defendant and that it is not duplicative of the copyright claim. Dkt. #36 at 22-24.

In their Complaint, Plaintiffs allege their Lanham Act claim as follows:

> 35. Defendant Amazon's unauthorized use of Plaintiff's marketing materials and its reproduction and emulation of Plaintiffs' photographs, images, and products are intended to cause confusion, mistake or to deceive consumers as to the source of origin of their products. Defendant's actions are likely to cause members of the public who search for Milo & Gabby's genuine products to believe that the goods being offered for sale, sold, and imported by Amazon to believe that the Amazon knock-offs have an affiliation, connection, association, origin, or sponsorship relationship with Milo & Gabby.

> 36. Defendant's actions constitute a false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

Dkt. #1 at ¶ ¶ 35-36. In response to discovery, Plaintiffs described the factual basis of their claim:

> Amazon has violated M&G's rights in the following marks: MILO & GABBY; COZY COMPANIONS; Original M&G TM Number – 3291697; Additional M&G TM Number – 4644732.

> **INTERROGATORY NO. 17:** Describe in detail the facts supporting all allegations of Amazon's allegedly unauthorized use of Plaintiffs' asserted trademark.

> **RESPONSE**:
> The response to this Interrogatory can be derived from documents being produced by M&G, specifically a screen shot of Amazon's website where

Milo & Gabby's Trademark was clearly readable. In addition, Amazon's wholesale copying of all of M&G's marketing materials, which were replete with references to M&G trademarks, including numerous misrepresentations that the products being purchased from Amazon were being sold in connection with the M&G marks.

Dkt. #31, Ex. A at *Response to Interrogatory Nos. 16 and 17.*

Trademark and copyright law have fundamentally different purposes. "Trademark law is concerned with the protection of symbols, elements or devices used to identify a product in the marketplace and to prevent confusion as to its source." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp.2d 556, 563 (C.D. Cal. 2005) (quoting *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos, Inc.*, 228 F.3d 56, 63 (2d Cir. 2000)). In contrast, copyright law "protects the artist's right in an abstract design or other creative work." *Id.* Therefore, trademark law protects the distinctive source-distinguishing mark, while copyright law protects the work as a whole. *See Whitehead v. CBS/Viacom, Inc.*, 315 F. Supp.2d 1, 13 (D.D.C. 2004).

The fact that the two areas of law protect against different wrongs is reflected in the many cases in which courts have analyzed the same set of facts under both trademark and copyright law without concluding that the trademark claims were "piggybacking" on the copyright claims. *See Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) (holding that an artist who developed a series of photographs which depicted Barbie in various absurd positions did not violate Mattel's copyright or trademark rights in Barbie doll); *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) (affirming a preliminary injunction prohibiting the publication of *The Cat NOT in the Hat! A Parody by Dr. Juice,* a rhyming summary of highlights from the O.J. Simpson trial, as violating Dr. Seuss's copyright and trademark rights); *Nintendo of Am., Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007 (9th Cir. 1994) (affirming district court's award of damages under both copyright and

trademark law where defendant copied Nintendo games (copyright infringement) and then sold the games as a package, but advertised that they were Nintendo products (trademark violation)); *Toho Co., Ltd. v. William Morrow & Co.*, 33 F. Supp. 2d 1206 (C.D. Cal. 1998) (issuing a preliminary injunction based on plaintiff's likelihood of success on both trademark and copyright claims where publisher was about to release book entitled "Godzilla" (trademark violation) that included images and photographs from original Godzilla film as well as descriptions of the character of Godzilla (copyright violations)).

In this case, Amazon argues that Plaintiffs' copyright and trademark claims overlap because the Complaint relies on similar factual allegations of copying for both its trademark and copyright claims. *See* Dkt. #1 at ¶ ¶ 28-31. But as Plaintiffs point out, Plaintiffs are seeking remedies for distinct wrongs under each legal framework. Plaintiffs' rights in the image and physical construct of the pillow case (a puffy animal-shaped pillow case/stuffed animal) are being asserted under copyright law because the images and physical construct are the creative work, while the name and title of the pillow cases ( Milo & Gabby and Cozy Companion) are protected under trademark law because it is the name and title that are the source-identifying marks associated with Plaintiffs. Dkt. #36 at 23.

The Court agrees that Plaintiffs' claims sound in both trademark and copyright law. The Court will therefore consider the merits of Plaintiffs' trademark claims.

### 2. Trademark Infringement

As noted above, Plaintiffs' trademark infringement claim is based on section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which provides, in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of

> fact, which -- (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To prevail on such a claim, Plaintiffs must show that they have a valid, enforceable mark entitled to protection under the Act, and that Defendant's use of the mark creates a likelihood of confusion. *See Brookfield Communs., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

In this case, Plaintiffs' claim fails because there is no evidence of a valid, enforceable mark entitled to protection under the Act. Plaintiffs have asserted that their trademark claim rests on alleged violations of "MILO & GABBY; COZY COMPANIONS; Original M&G TM Number – 3291697; Additional M&G TM Number – 4644732". Dkt. #31, Ex. A at *Response to Interrogatory No. 16*. "MILO & GABBY; COZY COMPANIONS" is a mixed word and design mark registered as U.S. Trademark No. 3291697 (the "Design Mark"). "MILO & GABBY" is a character mark registered as U.S. Trademark No. 4644732 (the "Word Mark"). Dkt. #31 at ¶ 10 and Ex. A at *Response to Interrogatory No. 16*. Defendants assert, and Plaintiffs have offered no evidence in rebuttal, that there is no evidence of any alleged use by Amazon of the Design Mark. Rather, it appears Plaintiffs assert an alleged use of the Word Mark via an image that allegedly depicts Plaintiffs' marketing materials and reflects the text "Milo & Gabby." *Id.* However, that Word Mark was not registered until November 25, 2014, over a year after the lawsuit was filed and the mark allegedly used. Dkt. #31 at ¶ 11 and Ex. B. Therefore, there was no presumption of validity at the time of alleged use. *See Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 789 (9th Cir. 1981) (explain that without federal registration, there is no presumption of validity).

ORDER
PAGE - 20

Moreover, to the extent Plaintiffs now claim that Amazon is infringing "COZY COMPANION," a purported common-law mark, *see* Dkt. #36 at 22-23, this Court takes judicial notice of the fact that COZY COMPANION is not a registered trademark. Dkt. #39 at 11, fn. 15. Further, Plaintiffs have failed to provide any evidence from which a jury could conclude that they own any rights in a COZY COMPANION mark, that this alleged mark serves as an identifier of source in the minds of consumers such that it is entitled to legal protection, or that there is any evidence of confusion. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014) (a plaintiff asserting an unregistered, common-law trademark must establish both ownership and protectability of the mark, including proof of distinctiveness).

Finally, the Court addresses Plaintiffs' arguments with respect to vicarious liability under the Lanham Act or "palming off" in violation of the Lanham Act, which have been raised for the first time in response to Defendant's summary judgment motion. Plaintiffs have never raised these theories of liability in their Complaint, nor have they alleged any facts in their Complaint providing notice to Defendant that they intended to advance such theories. *See* Dkt. #1. Accordingly, the Court will not consider Plaintiffs' arguments. *Pickern*, 457 F.3d at 965; *Williams*, 2013 U.S. Dist. LEXIS 72722 at *25.

For all of these reasons, the Court dismisses Plaintiffs' Lanham Act claim in its entirety.

## F. Direct Patent Infringement

Lastly, the Court turns to Plaintiffs' patent infringement claim. Plaintiffs allege as the basis for their patent infringement claim:

> 26. As set forth above, Plaintiff Milo & Gabby is the owner of several design patents that protect the Milo & Gabby Cozy Companion Products. Defendant Amazon is making, using, selling, offering for sale, and/or importing the Amazon knock-offs which are virtually indistinguishable (but for quality) from Plaintiff Milo & Gabby's patented designs.

27. Defendant Amazon's actions constitute patent infringement under 35 U.S.C. § 271, *et seq.*

Dkt. #1 at ¶ ¶ 26-27.  To succeed on a claim of direct patent infringement, a plaintiff must establish ownership of the patents and show that the accused infringer, without authorization, made, used, offered to sell, sold, or imported the patented invention.  35 U.S.C. § 271(a).

On summary judgment, Defendant argues that there is no evidence Amazon has ever "sold" or "offered to sell" such products within the meaning of 35 U.S.C. § 271(a).  Dkt. #30 at 23-24.  Plaintiffs oppose the motion, arguing that Amazon has indeed offered to sell the products within the meaning of the statute.  Dkt. #36 at 28-31.

The Federal Circuit Court of Appeals has examined the term "offered to sell" in the context of patent litigation:

> We have defined liability for an "offer to sell" under section 271(a) "according to the norms of traditional contractual analysis."  Thus, the defendant must "communicate[] a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude'" it.  We considered the meaning of "offer to sell" in *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373 (Fed. Cir. 1998).  The defendants in *3D Systems* provided potential California customers with price quotations, brochures, specification sheets, videos, and sample parts related to their product.  *Id.* at 1379.  Based on this activity, the patentee sued the defendants in the United States District Court for the Central District of California for infringement of a variety of patents, arguing that the defendants were liable for "offering to sell" the patented inventions.  *Id.* at 1377.  The defendants moved to dismiss the suit for lack of personal jurisdiction.  *Id.*  The district court granted the motion to dismiss; on appeal, this court reversed.  We concluded that although the "price quotation letters state on their face that they are purportedly not offers," the letters could be "regarded as 'offers to sell' under section 271 based on the substance conveyed in the letters, *i.e.*, a description of the allegedly infringing merchandise and the price at which it can be purchased."  We also noted that "one of the purposes of adding 'offer[] to sell' to section 271(a) was to prevent exactly the type of activity Aaroflex has engaged in, *i.e.*, generating interest in a potential infringing product to the commercial detriment of the rightful patentee."

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005).

The Court agrees with Plaintiffs that under the applicable definition of "offer to sell," questions of fact preclude summary judgment on this claim. As illustrated in Exhibit B to the Complaint, Amazon displays photos of the item for sale and invites the purchaser to place an order and buy the item through Amazon. Dkt. #1, Ex. B. While Amazon notes that the item is "sold" by a third-party vendor and "fulfilled" by Amazon, the fact that the item is displayed on the amazon.com website and can be purchased through the same website, could be regarded as an offer for sale for the reasons discussed in *MEMC*, *supra*. Likewise, looking at the website, a potential purchaser may understand that his or her assent is all that is required to conclude the deal. Indeed, the website notes the price, allows the buyer to choose a quantity, and allows the buyer to then conclude the purchase. For these reasons, summary judgment is inappropriate on this claim, and the Court will not dismiss it.

However, the Court clarifies the scope of the patent infringement claim to include only the five patents actually alleged to have been infringed in the Complaint. Dkt. #1 at ¶ 25. Defendant notes that Exhibit G to the Complaint reflects a sixth patent, U.S. Design Patent No. D545, 605 (the "'605 patent") that Plaintiffs are apparently attempting to put into contention now. *See* Dkt. #31 at ¶ 12 and Ex. A at *Response to Interrogatory No. 2*. However, infringement of that patent was never alleged in the Complaint, nor was it included in Plaintiffs' Preliminary Infringement Contentions, Dkts. #1 and #31 at ¶ 12 and Exs. C and D, and Plaintiffs have never moved to amend their Complaint to assert such a claim. Accordingly, the '605 patent will not be at issue in this matter.

ORDER
PAGE - 23

### G. Unavailability of the Court for Trial Date

This matter is currently scheduled for trial on September 28, 2015. However, the Court will be unavailable on that date due to other scheduled matters. Accordingly, the Court will be contacting the parties to discuss a new trial date. The Court advises that the parties meet and confer in the meantime to discuss mutually-agreeable potential trial dates and the length of the trial.

### H. Joinder of Necessary Party

This Court previously asked Plaintiffs to show cause why FAC System, LLC, should not be joined as a necessary party to this action. Dkt. #13 at 3, fn. 2. Plaintiffs filed a response, to which Defendant replied; however, the Court has not since addressed the issue, and no party has ever actually moved for such joinder. Because the Court has determined that Plaintiffs' copyright infringement and Lanham Act claims should be dismissed, but their patent infringement claim shall proceed, the Court invites Defendant to make a formal motion for joinder should Defendant believe such joinder is necessary, no later than 10 days from the date of this Order. Any such motion shall be noted on the Court's motion calendar in accordance with the Local Rules. Plaintiffs shall file any response in accordance with the Court's Local Rules. The parties should also address the affect of any joinder of a new party on the trial date in their briefing.

## IV.  CONCLUSION

Having reviewed the parties' cross-motions, the responses in opposition thereto and replies in support thereof, along with the supporting declarations and exhibits and the remainder of the record, the Court hereby FINDS and ORDERS:

1) Defendant's Motion for Summary Judgment (Dkt. #30) is GRANTED IN PART AND DENIED IN PART as discussed above.

2) Plaintiffs' copyright and Lanham Act claims are dismissed in their entirety. Plaintiffs' patent infringement claim remains.

3) The scope of Plaintiffs' patent infringement claim includes only the five patents actually alleged to have been infringed in the Complaint at Dkt. #1, ¶ 25.

DATED this 16th day of July 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE